1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| Ignacio LANUZA, | ) | Case No.: _____ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Jonathan M. LOVE, Assistant Chief Counsel, | ) | **COMPLAINT FOR DAMAGES** |
| Immigration and Customs Enforcement; and | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendants. | | |

## <u>INTRODUCTION</u>

1.      Plaintiff Ignacio Lanuza suffered through almost five years of unwarranted, expensive, and traumatic immigration proceedings as a result of a crude forgery on the part of Immigration and Customs Enforcement ("ICE"), a branch of the Department of Homeland Security ("DHS"). The manufactured evidence—a knowingly falsified government document allegedly signed by Mr. Lanuza in January of 2000—was introduced to the immigration court adjudicating Mr. Lanuza's case by Defendant Jonathan M. Love, an ICE prosecutor. The

COMPL. FOR DAMAGES (No. _____) - 1

**Northwest Immigrant Rights Project**
615 Second Ave., Ste. 400
Seattle, WA  98104
(206) 587-4009

manufactured evidence was submitted to disqualify Mr. Lanuza from applying for cancellation of removal for certain nonpermanent residents, a form of immigration relief that would allow him to remain in the United States with his wife and two young boys, all U.S. citizens. In falsifying and introducing a document that would bar Mr. Lanuza from this relief, ICE sought to deprive him of his statutory right to apply for lawful permanent residence before the Immigration Judge ("IJ") under 8 U.S.C. § 1229b(b)(1), in gross violation of Mr. Lanuza's right to due process.

2.      Cancellation of removal was Mr. Lanuza's only opportunity to remain in the United States with his U.S. citizen wife and children. However, as a direct result of the manufactured evidence submitted by Defendant Love, the IJ held that Mr. Lanuza was ineligible to seek lawful permanent residence under the statute, and ordered him removed. Similarly, relying on that same falsified document, the Board of Immigration Appeals ("BIA") denied Mr. Lanuza's appeal and issued a final administrative order that he be expelled from the country. Although Mr. Lanuza was eventually able to unveil the forgery and prevail in his reopened immigration case, ICE nearly succeeded in robbing him of his chance to keep his family together, causing Mr. Lanuza and his loved ones tremendous financial hardship and emotional suffering.

3.      Mr. Lanuza brings this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671-2680, against Defendant United States of America; and a constitutional claim under the Fifth Amendment against Defendant Love, pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971); to vindicate his rights.

COMPL. FOR DAMAGES (No. _____) - 2

**JURISDICTION**

4.      This action arises under the Constitution and laws of the United States, including the FTCA. This court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. §§ 1331 (federal question statute) and 1346(b) (United States as a defendant).

**EXHAUSTION**

5.      Pursuant to 28 U.S.C. § 2675(a), Plaintiff submitted an administrative tort claim to ICE on February 13, 2014.

6.      On August 11, 2014, ICE denied Mr. Lanuza's claim. Plaintiff has thus exhausted all available administrative remedies and is filing this complaint in accordance with the FTCA. Ex. A.

**VENUE**

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) as well as 1402(b). Upon information and belief, a substantial part of the events complained of occurred in this district. Additionally, at all times relevant to this complaint, Plaintiff resided in King County, Washington, which is within the jurisdiction of this court.

**PARTIES**

8.      Plaintiff Ignacio Lanuza is a lawful permanent resident who resides in King County, Washington. He works in construction and masonry and is the father of two children, ages 4 and 11.

9.      Defendant United States of America is the appropriate defendant for claims brought pursuant to the FTCA. 28 U.S.C. § 1346(b).

10.      Defendant Jonathan M. Love is an Assistant Chief Counsel for ICE in Seattle, Washington. At all relevant times, he was the attorney prosecuting Mr. Lanuza's case before the

COMPL. FOR DAMAGES (No. _____) - 3

Seattle immigration court and the individual who first made representations to the Court that the disqualifying evidence existed, and then later introduced into evidence the forged Form I-826 during those court proceedings. He is sued in his individual capacity.

## FACTS

11. Mr. Lanuza is a Mexican citizen who first entered the United States without inspection in 1996. He has since resided continuously in this country, working steadily and raising his family.

12. Mr. Lanuza began a romantic relationship with Nancy Estrada, a U.S. citizen, on or about early 2005. The couple married in May 3, 2009. They have two children, both U.S. citizens.

### Immigration Proceedings

13. On or about June 25, 2008, Mr. Lanuza encountered ICE Officer Anthony Dodd at the King County Jail in Seattle. Mr. Lanuza was in custody on suspicion of a weapons violation. During that encounter, Mr. Lanuza admitted that he did not have authorization to be in the United States.

14. On June 25, 2008, Officer Dodd executed a Form I-213, Record of Deportable/Inadmissible Alien, recounting his interaction with Mr. Lanuza, along with a Form I-826, Notice of Rights.

15. Officer Dodd noted on the I-213 that Mr. Lanuza "was advised of his rights as per form I-826 attached."

16. Supervising Officer Lisa McDaniel signed the I-213 as the "Examining Officer."

17. About a week after his encounter with Officer Dodd, Mr. Lanuza was transferred to immigration custody.

COMPL. FOR DAMAGES (No. _____) - 4

18.     At that time, upon information and belief, Officer Dodd served a Warrant for Arrest of Alien on Mr. Lanuza on July 3, 2008. The warrant was signed by Officer McDaniel and dated June 30, 2008.

19.     Upon information and belief, Officer Dodd also served Mr. Lanuza with a Notice to Appear in removal proceedings on July 3, 2008. The Notice was signed by Officer McDaniel and dated July 2, 2008.

20.     Mr. Lanuza was then placed in removal proceedings at the Tacoma, Washington, immigration court. After he posted bond and was released from immigration detention, however, his removal proceedings were transferred to the Seattle immigration court.

21.     At his Master Calendar Hearing in the Seattle court on May 6, 2009, Mr. Lanuza indicated to IJ Josephson that he would apply for adjustment of status under 8 U.S.C. § 1255(i) as well as cancellation of removal and adjustment of status for certain nonpermanent residents under § 1229b(b)(1). Ex. B at 32-33.[1]

22.     Cancellation of removal is a form of immigration relief whereby a person submits an application that allows an IJ to cancel the removal proceedings of an individual and adjust that individual's status to that of a lawful permanent resident.

23.     Mr. Lanuza satisfied the statutory requirements for cancellation of removal: he had been residing continuously in the United States for more than the requisite ten years; he possessed good moral character; he was not subject to any other bar to eligibility; and he had a wife and children who were U.S. citizens and for whom his removal would result in exceptional

---

[1]     However, developing case law reversed the prior rule established by the Court of Appeals in *Acosta v. Gonzales*, 439F.3d 550 (9th Cir. 2006), rendering Mr. Lanuza ineligible for adjustment under 8 U.S.C. § 1255(i). *See generally Garfias-Rodriguez v. Holder*, 702 F.3d 504 (9th Cir. 2012) (en banc). Thus, he was only eligible to apply for cancellation of removal.

**Northwest Immigrant Rights Project**
615 Second Ave., Ste. 400
Seattle, WA  98104
(206) 587-4009

and extremely unusual hardship. *See* 8 U.S.C. § 1229b(b)(1).

24.     During the May 2009 hearing, IJ Josephson asked Defendant Love to confirm representations Mr. Love had made off the record at that hearing: namely, that there were written documents in Mr. Lanuza's file purportedly confirming that Mr. Lanuza had waived an opportunity to appear before an IJ when he was apprehended at the U.S.-Mexico border in January 2000. Ex. B at 31-32.

25.     Defendant Love responded affirmatively, noting "[t]hat's what the documents say. That he signed an I-826." *Id.* at 32.

26.     IJ Josephson subsequently confirmed on the record that Defendant Love had stated that he would provide DHS's written submission with the documents he had referenced within one week. *Id*. at 33.

27.     Five days later, on May 11, 2009, Defendant Love submitted the additional evidence along with a motion to pretermit the application for cancellation in a packet entitled, "DHS NOTICE OF EVIDENCE AND MOTION TO PRETERMIT." Ex. C. It was this submission that included the manufactured evidence, a falsified Form I-826. *Id.* at 48.

28.     The document referenced by Defendant Love was a crudely forged I-826, allegedly signed by Mr. Lanuza on January 13, 2000 when he encountered U.S. Border Patrol Agent James L. Davis following a brief visit to Mexico. *Id.* at 37, 48.

29.     The signed I-826, purportedly from January of 2000, was critical in determining whether Mr. Lanuza would have the statutory right to seek cancellation of removal in order to remain with his family in the United States. Unless he established ten years of continuous presence in the United States before being placed in removal proceedings, he would not be statutorily eligible for such relief. 8 U.S.C. §§ 1229b(b)(1)(A), (d)(1).

**Northwest Immigrant Rights Project**
615 Second Ave., Ste. 400
Seattle, WA  98104
(206) 587-4009

30.     Under controlling case law, where an individual accepts administrative voluntary departure instead of exercising her or his right to appear before an IJ in removal proceedings—evidenced by, *inter alia*, a signed I-826 form waiving a hearing before a judge and choosing instead an expeditious return—breaks whatever continuous physical presence a non-citizen may have by then accrued. *Ibarra-Flores v. Gonzales*, 439 F.3d 614, 619-20 (9th Cir. 2006); *see also Landin-Zavala v. Gonzales*, 488 F.3d 1150, 1152 -1153 (9th Cir. 2007) ("When [a non-citizen] leaves pursuant to an administrative voluntary departure: [he] leaves with the knowledge that he does so in lieu of being placed in proceedings.").

31.     Thus, a signed I-826 from January of 2000 would have rendered Mr. Lanuza ineligible for cancellation of removal, as he would not have accumulated ten years of continuous physical presence, one of the prerequisites for establishing eligibility under § 1229b(b)(1)(A).

32.     In its submission, DHS moved to pretermit Mr. Lanuza's application for cancellation of removal, alleging that Mr. Lanuza's continuous physical presence was broken by the January 2000 voluntary departure. Ex. C at 37.

33.     Mr. Lanuza challenged the government's assertion, making clear that he had never been informed of an opportunity to appear in front of an IJ. Mr. Lanuza submitted a declaration to the IJ clarifying that no one "ever read to me or gave me a copy of the [form I-826]. The only thing that I did was to sign where the [Immigration] official indicated and the official did not explain anything in detail to me about the reason for the paper. I remember that everything happened very fast, we were about 70 or 80 persons when every body simply signed to leave voluntarily." Ex. D at 65.

34.     Additionally, he requested that the IJ issue a subpoena requiring that Border Patrol Agent Davis testify under oath as to the circumstances in which the I-826 was purportedly

**Northwest Immigrant Rights Project**
615 Second Ave., Ste. 400
Seattle, WA  98104
(206) 587-4009

signed, alleging that the current record was insufficient to establish that he had been provided an opportunity to appear in front of an immigration judge. *Id.* at 69-70.

35.     IJ Josephson denied Mr. Lanuza's request for a subpoena in June 2009. Ex. E.

36.     On January 5, 2010, moreover, the IJ found Mr. Lanuza ineligible, pretermitted Mr. Lanuza's application for cancellation of removal, and ordered him removed from the United States. Ex. F.[2] Judge Josephson agreed with DHS that the I-826 conclusively demonstrated that Mr. Lanuza's continuous physical presence terminated in 2000; because Mr. Lanuza was placed in removal proceedings fewer than ten years after January 2000, the IJ ruled that Mr. Lanuza was not statutorily eligible for cancellation of removal. *Id* at 81.

### On Appeal

37.     Mr. Lanuza appealed the IJ's order to the BIA. Ex. G.

38.     DHS, in a brief also filed by Defendant Love, responded by emphasizing that Mr. Lanuza's "signature on the form constituted a voluntary administrative return and effectively broke his continuous physical presence," citing to Ninth Circuit precedent that "held" non-citizens "to the consequences" of the documents they executed. Ex. H at 95, 97.

39.     Moreover, in relying on the existence of the signed I-826, DHS alleged that Mr. Lanuza,

> chose to return to Mexico as quick as possible and forego the opportunity to appear before an IJ. He signed this form acknowledging these rights and waiving such rights in Spanish. There is no contention on appeal that the respondent did not understand the form, read or understand the Spanish language *and that*

---

[2]     Mr. Lanuza's counsel of record, Glen Prior, passed away while Mr. Lanuza was facing removal proceedings before the immigration court. His proceedings were continued in order to afford him an opportunity to procure new legal representation. He then retained the Law Office of Carol Edwards to represent him before IJ Josephson. After the IJ ordered him removed, he again retained the Law Office of Carol Edwards to represent him on appeal to the BIA.

COMPL. FOR DAMAGES (No. ____) - 8

Northwest Immigrant Rights Project
615 Second Ave., Ste. 400
Seattle, WA  98104
(206) 587-4009

*anything which appeared on the form, in terms of language, signatures, and content was incorrect.*

*Id.* at 95-96 (emphasis added).

40.      On November 15, 2011, the BIA upheld IJ Josephson's decision, which was based exclusively on the January 2000 I-826, and ordered Mr. Lanuza removed to Mexico. Ex. I.

41.      In so holding, the BIA stressed the existence of the signed I-826, the knowing and voluntary execution of which signified a break in Mr. Lanuza's continuous presence in the United States, automatically disqualifying him from cancellation of removal. *Id.* at 101.

### Discovery of Manufactured Evidence

42.      On December 9, 2011, Mr. Lanuza retained the Law Office of Dobrin & Han to represent him in filing a petition for review to the Ninth Circuit Court of Appeals.

43.      After filing the petition for review on December 13, 2011, Mr. Lanuza's counsel, Hilary Han, reviewed the agency file in order to supplement the arguments in support of a motion for a stay of removal, which was subsequently filed on December 29, 2011. In reviewing the agency files at that time, Mr. Han discovered irregularities in the referenced I-826, as well as other documentation, that clearly demonstrated that the I-826 had been manipulated.

44.      Mr. Han ordered a forensic evaluation of the I-826, which further demonstrated the fraudulent nature of names and dates on the document. Ex. J.

45.      Given this information, Mr. Lanuza filed a motion to reopen his removal proceedings before the BIA on February 11, 2012. Ex. K.

46.      The government did not respond to Mr. Lanuza's motion.

**Northwest Immigrant Rights Project**
615 Second Ave., Ste. 400
Seattle, WA  98104
(206) 587-4009

47.     Citing "the seriousness and particularity of the allegations" raised by Mr. Lanuza, on April 20, 2012, the BIA granted his motion to reopen and remanded the case for a full evidentiary hearing on his claims and request for cancellation of removal. Ex. L at 129.

48.     It did so upon recognizing that Mr. Lanuza had "provided evidence indicating that the [I-826] submitted by the DHS may not be a complete and accurate document representing the respondent's immigration record," for it "contains anachronisms and other hallmarks which may suggest document tampering." *Id.*[3]

49.     Upon remand, DHS no longer contested that Mr. Lanuza was able to establish more than ten years of continuous presence, and agreed that he was statutorily eligible for cancellation of removal and adjustment of status under § 1229b(b)(1).

50.     Mr. Lanuza's ordeal finally came to a close on January 9, 2014, when the IJ granted his application, adjusting his status to lawful permanent resident. Ex. M.

**Falsified Form I-826**

51.     The I-826 on which the IJ and the BIA relied to deny Mr. Lanuza's statutory eligibility for cancellation of removal was not in fact executed in January 2000, as alleged by DHS.

52.     The I-826 was falsified by an ICE official to make it appear as if it had been signed and dated in January of 2000.

53.     An I-826 is a government form that is created by DHS, and thereafter remains only in the possession of ICE, and the files kept by ICE. Only an ICE official would have access

---

[3]     Mr. Lanuza filed a motion to dismiss his petition before the Ninth Circuit Court of Appeals on April 24, 2012 in light of the BIA's decision to reopen his case. The Ninth Circuit granted that petition on April 25, 2012.

COMPL. FOR DAMAGES (No. _____) - 10

**Northwest Immigrant Rights Project**
615 Second Ave., Ste. 400
Seattle, WA  98104
(206) 587-4009

to the form. Thus, only an ICE official would be in a position to manufacture the evidence by falsifying the form that was later submitted to the immigration court.

54.     Upon information and belief, the form DHS submitted was executed in June 2008, contemporaneously with or subsequent to Mr. Lanuza's encounter with ICE in the King County jail. The I-213 executed by Officer Dodd on June 25, 2008 references an "attached" I-826 form, presumably executed on the same day. Ex. C at 41. That I-826 from 2008, however, was not attached to the I-213 when it was submitted to the immigration court on May 11, 2009 and was not provided with the Administrative Record.

55.     The I-826 from 2008 was instead altered by ICE to appear as if Mr. Lanuza had signed it in January 2000.

56.     This fact is readily apparent given that the I-826 allegedly signed by Mr. Lanuza on January 13, 2000 is a *DHS* form. *Id.* at 48.

57.     However, DHS did not exist at that time. DHS was only established in response to the September 11, 2001 terrorist attacks, which occurred nearly 20 months *after* Mr. Lanuza allegedly signed the form. Prior to that time most immigration enforcement actions were the responsibility of the Immigration and Naturalization Service ("INS"), an agency of the Department of Justice.

58.     The INS ceased to exist in 2003, and most of its functions were transferred to the newly created DHS. *See* Homeland Security Act of 2002, Pub.L. No. 107–296, §§ 441, 471, 116 Stat. 2135, 2192, 2205 (codified at 6 U.S.C. §§ 251, 291).

59.     The forensic document examiner's report highlights that, for this reason, "the [f]orm itself is evidence of manipulation of the" I-826. Ex. J at 104.

COMPL. FOR DAMAGES (No. ____) - 11

60.     Notably, since Mr. Lanuza had allegedly signed a Spanish-language version of the form, DHS's original submission provided an English-language version of the I-826 for the IJ's reference—but this English-version form was an INS form, not a DHS form. Ex. C at 48-49.

61.     In addition, the forensic document examiner determined that the Spanish-language document had "numerous anomalies and anachronistic characteristics." Ex. J at 103.

62.     First, it was the signature of Officer Dodd, the ICE officer who had encountered Mr. Lanuza in June 2008 in Seattle, that appeared on the I-826 DHS had submitted as having been executed in January 2000, purportedly by Mr. Lanuza and Border Patrol Agent Davis. *Id.* at 105.

63.     Second, given similarities in writing, the forensic examiner believed that Officer Dodd might have also been the person who wrote the hand-printed word "Spanish" on the form. *Id.* at 106.

64.     Third, other handwriting on the form did not appear to match the handwriting of the word "Spanish" and, indeed, the forensic document examiner concluded that these "dissimilarities in the style and skill level may represent the writings of two individuals or the attempt by one or more individuals to distort their handwriting or imitate the handwriting of another individual." *Id.* at 105.

65.     Fourth, the examiner also identified at least four areas on the form "where obliterations of either [a] mechanical or digital nature were observed," indicating "the presence of an erasure, deletion or overlay of text either [] manually or digitally with the use of computer software." *Id.* at 104.

66.     Fifth, a computer printout submitted by DHS documenting Mr. Lanuza's January 13, 2000 voluntary return did not include an alien registration number for Mr. Lanuza, while the

**Northwest Immigrant Rights Project**
615 Second Ave., Ste. 400
Seattle, WA  98104
(206) 587-4009

allegedly contemporaneously-documented I-826 did. Ex. K at 117. Had Mr. Lanuza been assigned an alien registration number prior to or during that alleged voluntary departure, that number ought to have appeared on the printout documenting that voluntary departure—yet it did not.

67.     Sixth, both the I-826 allegedly executed in January 2000 and the I-213 executed in June 2008 list the same "subject ID" number (274889559), despite purportedly being executed over eight years apart. *Id.* at 118. The "FINS" and "event" numbers, moreover, have been whited out in the I-826, suggesting they might also match the information found in the I-213. *Id.* at n.3.

68.     It is thus evident that an ICE official altered this critical document in Mr. Lanuza's case.

69.     Not only did ICE manufacture evidence by altering the original I-826, an ICE official then removed any evidence of the original I-826 from the administrative files, and replaced it with the altered document, now dated January 2000.

70.     Defendant Love submitted the altered document to the immigration court after previously stating in immigration court that the file contained a signed I-826 from January 2000. Exs. B, C.

71.     Relying on the blatant forgery, Defendant Love successfully argued to both the IJ and the BIA that the document rendered Mr. Lanuza statutorily ineligible for the relief he had applied for. Exs. B, C, H.

72.     The I-826 was falsified for the purpose of stripping Mr. Lanuza of his statutory right to apply for cancellation of removal for certain nonpermanent residents, violating Mr. Lanuza's right to due process in his immigration proceedings.

**Northwest Immigrant Rights Project**
615 Second Ave., Ste. 400
Seattle, WA  98104
(206) 587-4009

73.     As evinced by DHS's subsequent change in position upon remand from the BIA, and the eventual grant of such relief by the IJ, Mr. Lanuza had satisfied all statutory requirements all along: he had accrued the necessary continuous physical presence; possessed the requisite good moral character; was not subject to any other bars to eligibility; and had U.S. citizen family members who would suffer exceptional and extremely unusual hardship were he deported.

74.     ICE's falsification and submission of the forged I-826 resulted in an initial order of removal from both the IJ and the BIA, and very nearly succeeded in uprooting Mr. Lanuza from his home and permanently separating his family.

75.     Mr. Lanuza and his family suffered greatly as a result of these egregious actions, undergoing a lengthy and expensive legal process that spanned some five and a half years and took an extreme toll not just on their finances but also on their emotional and physical well-being.

## COLOR OF LAW

76.     Defendants acted under color law and acted or purported to act in the performance of official duties under the law, as federal agents.

## FIRST CLAIM FOR RELIEF
### Abuse of Process Against Defendant United States
### (Federal Tort Claims Act)

77.     Mr. Lanuza re-alleges and incorporates by reference as if set forth fully herein the statements above.

78.     ICE manufactured evidence, intentionally forging the Form I-826 to make it appear as though Mr. Lanuza has knowingly and voluntarily taken an administrative voluntary departure in January 2000, so as to render him ineligible to apply for cancellation of removal.

COMPL. FOR DAMAGES (No. _____) - 14

79.     The ICE official who falsified the I-826 acted as an investigative or law enforcement officer in knowingly manufacturing evidence that was later used to deprive Mr. Lanuza of his statutory right to apply for cancellation from removal.

80.     ICE caused the intentionally forged I-826 to be submitted to the IJ as evidence in Mr. Lanuza's removal case.

81.     The I-826 was falsified and submitted to the immigration court for the purpose of stripping Mr. Lanuza of his statutory right to apply for cancellation of removal for certain nonpermanent residents, violating Mr. Lanuza's right to due process in his immigration proceedings.

82.     ICE misused the mechanisms of the immigration court process—designed to be governed by rules and procedures that provide an immigration respondent with a full and fair hearing, including an opportunity to apply for available forms of relief—for the improper purpose of depriving Mr. Lanuza of his statutory right to apply for cancellation of removal.

83.     Mr. Lanuza suffered great harm, including, but not limited to, economic loss and severe emotional distress as a result of the abuse of process to which he was subjected by the ICE Defendants.

84.     Defendant United States of America is liable for these acts and omissions under the FTCA.

### SECOND CLAIM FOR RELIEF
**Malicious Prosecution Against Defendant United States**
**(Federal Tort Claims Act)**

85.     Mr. Lanuza re-alleges and incorporates by reference as if set forth fully herein the statements above.

**Northwest Immigrant Rights Project**
615 Second Ave., Ste. 400
Seattle, WA  98104
(206) 587-4009

86.     ICE manufactured evidence, intentionally forging an I-826 form to make it appear as though Mr. Lanuza had knowingly and voluntarily taken an administrative voluntary departure in January 2000, so as to render him ineligible to apply for cancellation of removal.

87.     The ICE official who falsified the I-826 acted as an investigative or law enforcement officer in knowingly manufacturing evidence that was later used to deprive Mr. Lanuza of his statutory right to apply for cancellation from removal.

88.     ICE caused the intentionally forged I-826 to be submitted to the IJ as evidence in Mr. Lanuza's removal case.

89.     The I-826 was falsified and submitted to the immigration court for the purpose of stripping Mr. Lanuza of his statutory right to apply for cancellation of removal for certain nonpermanent residents, violating Mr. Lanuza's right to due process in his immigration proceedings.

90.     In so doing, ICE caused the continued prosecution of Mr. Lanuza's removal case, by opposing his statutory eligibility for cancellation of removal, when he indisputably satisfied the statutory requirements for such relief and had a right under the statute to have the IJ adjudicate his claim to relief on the merits.

91.     ICE's continued prosecution of Mr. Lanuza and opposition to his statutory eligibility for cancellation of removal under 8 U.S.C. § 1229b(b)(1) was without cause.

92.     ICE acted with the improper and wrongful motive of depriving Mr. Lanuza of his statutory right to apply for immigration relief, knowing that denying him this right would very likely result in Mr. Lanuza's deportation and separation from his family. At a minimum, ICE manufactured evidence and caused it to be introduced as evidence in court, with deliberate

COMPL. FOR DAMAGES (No. _____) - 16

**Northwest Immigrant Rights Project**
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 587-4009

indifference or, in the alternative, in reckless disregard of Mr. Lanuza's rights to apply for cancellation of removal and to have a full and fair hearing that comported with due process.

93.     Despite ICE's initial actions to strip Mr. Lanuza of his statutory right to seek cancellation of removal by manufacturing evidence, both DHS and the IJ acknowledged in the reopened proceedings that Mr. Lanuza was statutorily eligible for cancellation of removal, and the IJ eventually ruled in Mr. Lanuza's favor, granting him cancellation of removal and adjustment of status to lawful permanent residence.

94.     Mr. Lanuza suffered great harm, including, but not limited to, economic loss and severe emotional distress as a result of the malicious prosecution to which he was subjected by ICE.

95.     Defendant United States of America is liable for these acts and omissions under the FTCA.

### THIRD CLAIM FOR RELIEF
**Intentional Infliction of Emotional Distress Against Defendant United States**
**(Federal Tort Claims Act)**

96.     Mr. Lanuza re-alleges and incorporates by reference as if set forth fully herein the statements above.

97.     The I-826 was falsified and submitted to the immigration court for the purpose of stripping Mr. Lanuza of his statutory right to apply for cancellation of removal for certain nonpermanent residents, violating Mr. Lanuza's right to due process in his immigration proceedings.

98.     ICE's actions were both extreme and outrageous. Manufacturing evidence by intentionally altering a government document and causing it to be introduced in court in order to deprive someone of his statutory right—and his only viable form of relief from deportation—is

COMPL. FOR DAMAGES (No. _____) - 17

Northwest Immigrant Rights Project
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 587-4009

despicable; that the perpetrators of such an act would be a government official, or a set of government officials, is shocking and utterly intolerable in a system governed by the rule of law. Such conduct makes a mockery of the due process owed to individuals in removal proceedings and creates societal mistrust in the immigration court system.

99.     Mr. Lanuza suffered severe emotional distress actually and proximately caused by ICE's unlawful actions, which forced him and his family to endure unnecessarily lengthy and needlessly complex immigration proceedings.

100.     Mr. Lanuza's distress was thus brought about by, *inter alia*, the fear and uncertainty he and his family suffered as the threat of deportation loomed over their every action during the duration of Mr. Lanuza's immigration court proceedings, which spanned more than five years; anxiety over being separated from his loved ones and forced to abandon the life they had built together here; as well as the financial stressors of having to secure legal representation over such a prolonged period of time.

101.     The acts and omissions of ICE in forging the I-826 and causing it to be submitted to the court were committed with deliberate intention to cause Mr. Lanuza severe emotional distress or, at minimum, with reckless disregard of the probability of causing Mr. Lanuza such stress.

102.     Defendant United States of America is liable for these acts and omissions under the FTCA.

**FOURTH CLAIM FOR RELIEF**
**Violation of Substantive and Procedural Due Process under the Fifth Amendment**
**to the Constitution Against Defendant Love**
**(*Bivens*)**

Northwest Immigrant Rights Project
615 Second Ave., Ste. 400
Seattle, WA  98104
(206) 587-4009

103.    Mr. Lanuza re-alleges and incorporates by reference as if set forth fully herein the statements above.

104.    By knowingly manufacturing false evidence—specifically, intentionally falsifying the I-826 which he subsequently submitted to the immigration court—Defendant Love deprived Mr. Lanuza of his constitutionally protected right under the Fifth Amendment to due process—both procedural and substantive—as guaranteed by the Fifth Amendment to the Constitution of the United States.

105.    Defendant Love acted as an investigative or law enforcement officer in knowingly manufacturing evidence that was later used to deprive Mr. Lanuza of his statutory right to apply for cancellation from removal.

106.    Defendant Love's conduct proximately caused harm to Mr. Lanuza, as the manufactured evidence was subsequently submitted to the immigration court and the IJ relied on the forged document to rule that Mr. Lanuza was not eligible to apply for cancellation of removal and adjustment of status to lawful permanent residence.

107.    Defendant Love's conduct was done intentionally, with deliberate indifference, or, at a minimum, reckless disregard of Mr. Lanuza's constitutional rights.

108.    Defendant Love's conduct was unreasonable, arbitrary, and capricious.

109.    This cause of action for the violation of Mr. Lanuza's Fifth Amendment rights is brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

## ALTERNATIVE FIFTH CLAIM FOR RELIEF

### Negligence (Federal Tort Claims Act)

**Northwest Immigrant Rights Project**
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 587-4009

110.     Mr. Lanuza re-alleges and incorporates by reference as if set forth fully herein statements ¶¶ 4-76 above.

111.     Mr. Lanuza alternatively claims under Fed. R. Civ. P. 8(d)(2) that, to the extent Defendant Love may have submitted the forged I-826 to the immigration court without knowledge of its falsification, ICE did negligently allow such manufactured evidence to be submitted to the immigration court and relied on throughout the removal proceedings.

112.     When preparing a submission for the court, any reasonable official should have recognized that no DHS form could have existed in January 2000.

113.     ICE has a duty to act with reasonable care in exercising its authority, including ensuring that its prosecution of removal proceedings affords the respondent with a full and fair hearing that comports with due process. *See* 8 U.S.C. § 1229a(b)(4)(B). ICE owed this duty of care to Mr. Lanuza.

114.     ICE breached that duty when Defendant Love submitted manufactured evidence to the immigration court, without any regard for the document's veracity, even though the document on its face clearly demonstrated that it could not be what it purported to be: a DHS form from January of 2000.

115.     ICE's conduct was unreasonably dangerous, as Defendant Love failed to exercise even minimal care, and certainly failed to exercise such care as a reasonable person would exercise under similar circumstances. ICE's conduct caused harm to Mr. Lanuza, as the manufactured evidence was subsequently submitted to the immigration court and the IJ relied on the forged document to order Mr. Lanuza removed, finding that he was not eligible to apply for cancellation of removal and adjustment of status to lawful permanent residence.

**Northwest Immigrant Rights Project**
615 Second Ave., Ste. 400
Seattle, WA  98104
(206) 587-4009

116.   ICE's breach also directly resulted in the affirmance of that order of removal by the BIA.

117.   As a result, Mr. Lanuza suffered severe emotional distress brought about by, *inter alia*, the fear and uncertainty he and his family suffered as the threat of deportation loomed over their every action during the duration of Mr. Lanuza's immigration court proceedings, which spanned more than five years; anxiety over being separated from his loved ones and forced to abandon the life they had built together here; as well as the financial stressors of having to secure legal representation over such a prolonged period of time.

118.   The acts and omissions of ICE in failing to exercise reasonable care to ensure that the manufactured evidence was not submitted to the court actually and proximately caused this harm to Mr. Lanuza.

119.   Defendant United States of America is liable for these acts and omissions under the FTCA.

## ALTERNATIVE SIXTH CLAIM FOR RELIEF

### Negligent Infliction of Emotional Distress (Federal Tort Claims Act)

120.   Mr. Lanuza re-alleges and incorporates by reference as if set forth fully herein statements ¶¶ 4-76 above.

121.   Mr. Lanuza alternatively claims under Fed. R. Civ. P. 8(d)(2) that, to the extent Defendant Love may have submitted the forged I-826 to the immigration court without knowledge of its falsification, ICE did negligently allow such manufactured evidence to be submitted to the immigration court and relied on throughout the removal proceedings.

122.   When preparing a submission for the court, any reasonable official should have recognized that no DHS form could have existed in January 2000.

COMPL. FOR DAMAGES (No. _____) - 21

Northwest Immigrant Rights Project
615 Second Ave., Ste. 400
Seattle, WA  98104
(206) 587-4009

123.    ICE's conduct was unreasonably dangerous, as ICE officials involved failed to exercise even minimal care, and certainly failed to exercise such care as a reasonable person would exercise under similar circumstances.

124.    Defendant Love submitted manufactured evidence to the immigration court, without any regard for the document's veracity, even though the document on its face clearly demonstrated that it could not be what it purported to be: a DHS form from January of 2000.

125.    The failure of the agency to exercise even minimal care in determining the veracity of the government documents it provided to the immigration court, directly resulted in the initial order of removal from the IJ and the affirmance of that removal order by the BIA.

126.    The acts and omissions of ICE in failing to exercise reasonable care to ensure that the manufactured evidence was not submitted to the court actually and proximately caused the harm to Mr. Lanuza in the form of, among others, severe emotional distress.

127.    Mr. Lanuza's distress was brought about by, *inter alia*, the fear and uncertainty he and his family suffered as the threat of deportation loomed over their every action during the duration of Mr. Lanuza's immigration court proceedings, which spanned more than five years; anxiety over being separated from his loved ones and forced to abandon the life they had built together here; as well as the financial stressors of having to secure legal representation over such a prolonged period of time.

128.    Defendant United States of America is liable for these acts and omissions under the FTCA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests relief as follows:

a.    Trial by judge on all claims so triable.

**Northwest Immigrant Rights Project**
615 Second Ave., Ste. 400
Seattle, WA  98104
(206) 587-4009

b.  Compensatory damages from Defendant United States in an amount to be proven at trial.

c.  Nominal, compensatory, and punitive damages from Defendants Love.

d.  Costs and reasonable attorney fees.

e.  The right to conform the pleadings to the proof and evidence presented at trial.

f.  Such other relief as the Court deems just and equitable.

DATED this 23rd day of October, 2014.          By:

s/ Matt Adams_____
Matt Adams, WSBA No. 28287
Northwest Immigrant Rights Project
615 Second Ave., Ste. 400
Seattle, WA  98104
Telephone: (206) 957-8611
Fax: (206) 587-4025
E-mail: matt@nwirp.org

s/ Glenda M. Aldana Madrid___
Glenda M. Aldana Madrid, WSBA No. 46987
Northwest Immigrant Rights Project
615 Second Ave., Ste. 400
Seattle, WA  98104
Telephone: (206) 957-8646
Fax: (206) 587-4025
E-mail: glenda@nwirp.org

*Attorneys for Plaintiff*
*Ignacio LANUZA*

COMPL. FOR DAMAGES (No. _____) - 23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Ignacio LANUZA, | ) Case No.: _____ |
| Plaintiff, | ) |
| | ) **EXHIBITS IN SUPPORT OF** |
| v. | ) **COMPLAINT FOR DAMAGES** |
| | ) |
| Jonathan M. LOVE, Assistant Chief Counsel, | ) |
| Immigration and Customs Enforcement; and | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendants. | ) |

| **Exhibit** | **Exhibit Name** | **Page Number** |
|---|---|---|
| A | August 11, 2014 Notice of Denial of FTCA Claim | 26 |
| B | May 6, 2009 Immigration Court Hearing Transcript | 28 |
| C | May 2009 DHS Notice of Evidence and Motion to Pretermit | 35 |
| D | Excerpts of Mr. Lanuza's June 2009 Submissions to the Immigration Court | 52 |
| E | June 2009 Order of the Immigration Judge | 77 |
| F | January 2010 Order of the Immigration Judge | 79 |
| G | Mr. Lanuza's April 2010 Appeal Brief to the BIA | 82 |

COMPL. FOR DAMAGES (No. _____) - 24

**Northwest Immigrant Rights Project**
615 Second Ave., Ste. 400
Seattle, WA  98104
(206) 587-4009

| H | DHS May 2010 Brief to the BIA | 92 |
|---|---|---|
| I | November 2011 BIA Decision | 99 |
| J | February 2012 Northwest Forensics Report | 102 |
| K | Excerpts from Mr. Lanuza's February 2012 Motion to Reopen to the BIA | 108 |
| L | April 2012 BIA Decision | 128 |
| M | January 2014 Order of the Immigration Judge | 130 |

COMPL. FOR DAMAGES (No. _____) - 25