1
2
3
4
5
6
7
8       UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
9                  AT SEATTLE

10   IGNACIO LANUZA,                    CASE NO. C14-1641 MJP

11              Mr. Lanuza,              ORDER ON MOTIONS

12         v.

13   JONATHAN M. LOVE, et. al.

14              Defendants.

15

16      THIS MATTER comes before the Court on Defendant Jonathan M. Love's Motion to

17   Dismiss, (Dkt. No. 9), and Defendant United States' Motion to Dismiss, (Dkt. No. 14). The

18   Court reviewed the motions, Plaintiff Ignacio Lanuza's response briefs, (Dkt. Nos. 18, 24), and

19   the related record. The Court GRANTS Defendant Love's Motion to Dismiss and DISMISSES

20   Plaintiff's claims against Defendant Love, (Dkt. No. 9). The Court GRANTS in part DENIES in

21   part Defendant United States' Motion to Dismiss, (Dkt. No. 14). In light of its rulings on these

22   motions, the Court DENIES Defendant Love's pending Motion to Stay, (Dkt. No. 10), as moot

23   and DENIES Mr. Lanuza's pending Motion to Compel, (Dkt. No. 30), as moot.

24   /

**Background**

Plaintiff Ignacio Lanuza alleges the following facts in his complaint. (Dkt. No. 1.) On or about June 25, 2008, while he was in custody on suspicion of a weapons violation, Mr. Lanuza met Immigration and Customs Enforcement ("ICE") Officer Anthony Dodd at King County Jail. (Id. at 4.) During their meeting, Mr. Lanuza admitted to Officer Dodd that he did not have authorization to be in the United States. (Id.)

On June 25, 2008, Officer Dodd completed an I-213 Form ("Record of Deportable/Inadmissible Alien") recounting his interaction with Mr. Lanuza along with an I-826 Form ("Notice of Rights"). (Id.) Officer Dodd wrote on the I-213 Form that Mr. Lanuza had been advised of his rights per the I-826 Form. (Id.)

Mr. Lanuza was transferred to immigration custody about one week after his meeting with Officer Dodd. (Id.) Officer Dodd served Mr. Lanuza with a Warrant for Arrest of Alien and a Notice to Appear in removal proceedings on July 3, 2008. (Id. at 5.) Although Mr. Lanuza was initially placed in removal proceedings at the Tacoma Immigration Court, he subsequently posted bond and his removal proceedings were transferred to the Seattle Immigration Court. (Id.)

On May 6, 2009, at his master calendar hearing, Mr. Lanuza indicated to the Immigration Judge ("IJ") that he would apply for cancellation of removal. (Id.) Cancellation of removal is a form of relief that allows the IJ to cancel removal proceedings and adjust the applicant's immigration status to that of a lawful permanent resident. (Id.) At the time he was placed in removal proceedings, Mr. Lanuza satisfied the statutory requirements for cancellation of removal, including ten years of continuous presence in the United States. (Id.)

During his May 2009 immigration hearing, the IJ asked Defendant Love to confirm representations that Defendant Love had made off the record. (Id. at 6.) Specifically, the IJ

asked Defendant Love to confirm that there were documents in Mr. Lanuza's file that showed he had waived his opportunity to appear before an IJ when he was apprehended at the U.S.-Mexico border in January of 2000. (Id.) Defendant Love responded affirmatively to the IJ's question, asserting that Mr. Lanuza had signed an I-826 Form. (Id.)

On May 11, 2009, Defendant Love submitted the additional evidence requested by the IJ, including an I-826 Form that Mr. Lanuza contends was falsified, along with a motion opposing Mr. Lanuza's application for cancellation of removal. (Id.)

The I-826 Form was critical in determining whether Mr. Lanuza would be able to remain in the United States with his family because a signed I-826 Form would render him ineligible for cancellation of removal. (Id.) By signing an I-826 Form, a non-citizen accepts an administrative voluntary departure instead of exercising his right to appear before an IJ in removal proceedings and thereby breaks whatever continuous physical presence he may have by then accrued. (Id. at 7.)

In its submission to the IJ, the Department of Homeland Security ("DHS") argued that Mr. Lanuza was made ineligible for cancellation of removal because his continuous presence in the United States was broken by the January 2000 voluntary departure. (Id.) Mr. Lanuza challenged DHS's position, arguing:

> Nobody ever read to me or gave me any copy of the paper that my attorney [] showed me. The only thing that I did was to sign where the [Immigration] official indicated and the official did not explain anything in detail to me about the reason for the paper. I remember everything happened very fast, we were about 70 to 80 persons when everybody simply signed to leave voluntarily.

(Dkt. No. 1-6 at 40.) Mr. Lanuza requested that the IJ issue a subpoena requiring Border Patrol Agent Davis to testify under oath as to the circumstances under which the I-826 Form was signed. (Dkt. No. 1 at 7-8.) The IJ denied his request for subpoena in June 2009. (Id. at 8.)

1    On January 5, 2010, the IJ found Mr. Lanuza ineligible for cancellation of removal and
2 ordered him removed from the United States. (Id.) The IJ's decision that Mr. Lanuza was not
3 eligible for cancellation of removal was based on the I-826 Form. (Id.) Mr. Lanuza appealed
4 the IJ's decision to the Board of Immigration Appeals ("BIA"), and DHS defended its position
5 before the BIA. (Id.) The BIA upheld the IJ's decision, "which was based exclusively on the
6 January 2000 I-826, and ordered [Mr. Lanuza] removed to Mexico." (Id. at 9.)

7    Mr. Lanuza hired new counsel on December 9, 2011 to represent him in the Ninth
8 Circuit. (Id.) In December of 2011, Mr. Lanuza's new counsel, Mr. Hilary Han, discovered
9 irregularities in the I-826 Form, as well as other documentation, while reviewing the agency file.
10 (Id.) These irregularities indicated the I-826 Form had been manipulated. (Id.) Mr. Han ordered
11 a forensic evaluation of the I-826 Form. (Id.) The forensic evaluation was completed on
12 February 1, 2012. (Dkt. No. 1-7 at 22-26.) The results of the evaluation demonstrated the I-826
13 Form had been falsified. (Dkt. No. 1 at 9.)

14    Mr. Lanuza filed a motion to reopen his removal proceedings before the BIA on February
15 11, 2012. (Id.) The government did not respond to his motion. (Id.) The BIA granted Mr.
16 Lanuza's motion and remanded his case for a full evidentiary hearing on April 20, 2012, citing to
17 the "seriousness and particularity of the allegations" raised by Mr. Lanuza. (Id. at 10.)

18    On remand, DHS did not contest Mr. Lanuza's eligibility for cancellation of removal.
19 (Id.) On January 9, 2014, the IJ granted his application, adjusting his status to that of lawful
20 permanent resident. (Id.)

21    On February 13, 2014, Mr. Lanuza filed a tort claim against the United States. (Dkt. No.
22 1-6 at 2.) The tort claim was denied on August 11, 2014. (Id.)

Mr. Lanuza commenced this action on October 23, 2014 against Defendant Jonathan M. Love and Defendant United States. (Dkt. No. 1.) Mr. Lanuza alleges claims of: (1) abuse of process; (2) malicious prosecution; (3) intentional infliction of emotional distress; (4) negligence; and (5) negligent infliction of emotional distress against Defendant United States pursuant to the Federal Tort Claims Act ("FTCA"). (Id. at 14-22.) Mr. Lanuza alleges Defendant Love violated his substantive and procedural due process rights under the Fifth Amendment to the Constitution. (Id. at 18-19.) Both Defendants move to dismiss Mr. Lanuza's complaint. (Dkt. Nos. 9,14.) In addition, Defendant Love has filed a motion to stay this case pending the Court's ruling on his motion to dismiss in which Defendant United States also joins. (Dkt. No. 10.)

## Discussion/Analysis

### I.   Legal Standard Motion to Dismiss

The Federal Rules require a plaintiff to plead "a short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 545) (further noting that plausibility lies somewhere between allegations that are "merely consistent" with liability and a "probability requirement"). In determining plausibility, the Court accepts all facts in the complaint as true. Barker v. Riverside County Office of Educ., 584 F.3d 821, 824 (9th Cir. 2009). The Court need not accept as true any legal conclusions put forth by the plaintiff. Iqbal, 556 U.S. at 678.

1    Rule 12(b)(1) permits a motion to dismiss based on lack of subject matter jurisdiction.  It

2 is a fundamental precept that federal courts are courts of limited jurisdiction.  <u>Vacek v. UPS</u>, 447

3 F.3d 1248, 1250 (9th Cir. 2006). "A federal court is presumed to lack jurisdiction in a particular

4 case unless the contrary affirmatively appears." <u>A–Z Int'l v. Phillips</u>, 323 F.3d 1141, 1145 (9th

5 Cir. 2003) (citations omitted).  The plaintiff has the burden of establishing that subject matter

6 jurisdiction is proper.  <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375, 377 (1994).

7   **II.**  **Defendant Love's Motion to Dismiss**

8    Defendant Love argues Mr. Lanuza's claims against him should be dismissed because:

9 (1) Mr. Lanuza seeks to impermissibly extend <u>Bivens</u> liability to a new context; (2) Mr. Lanuza's

10 complaint is time-barred; (3) Defendant Love is entitled to qualified immunity; and (4) Mr.

11 Lanuza's complaint fails to provide the level of specificity required by federal case law.  (Dkt.

12 No. 9 at 1-17.)

13    **A.  Bivens Liability**

14    Defendant Love argues Mr. Lanuza impermissibly seeks to extend <u>Bivens</u> liability to a

15 new context, citing <u>Mirmehdi v. United States</u>, 689 F.3d 975, 981 (9th Cir. 2011).  (Dkt. No. 9 at

16 4-9.)  Mr. Lanuza contends: (1) that this case does not present a new context for <u>Bivens</u> liability;

17 and (2) even if it did, <u>Bivens</u> liability is appropriate under the two-prong test announced by the

18 Supreme Court in <u>Wilkie v. Robbins</u>, 551 U.S. 537 (2007).  (Dkt. No. 18 at 3-13.)  The Court

19 agrees with Mr. Lanuza that a <u>Bivens</u> remedy should be available to him.  Nevertheless, the

20 Court finds the Ninth Circuit's opinion in <u>Mirmehdi</u> forecloses such a remedy.

21    The Ninth Circuit has defined "context," for purposes of <u>Bivens</u> liability, as "a potentially

22 recurring scenario that has similar legal and factual components." <u>Mirmehdi</u>, 689 F.3d at 981.

23 Mr. Lanuza brings suit against Defendant Love for constitutional violations he alleges occurred

24 during deportation proceedings.  "Deportation proceedings" provide the appropriate context for

this case because the remedies available to non-citizens for constitutional violations differ from those available to citizens. Id. The cases to which Mr. Lanuza cites for the proposition that this case does not present a new context for Bivens liability are factually and legally dissimilar from this case. See e.g., Papa v. United States, 281 F.3d 1004, 1010-11 (9th Cir. 2002) (holding that a non-citizen could bring a Bivens action for alleged due process violations that occurred during immigration detention); see also Guerra v Sutton, 783 F.2d 1371, 1375 (9th Cir. 1986) (holding a Bivens action is available where an INS agent conducts a search or makes an arrest "without knowledge of the details of the warrant under which he presumes to act"). Therefore, the Court must determine whether a Bivens remedy is appropriate in the context this case presents.

In Wilkie v. Robbins, 551 U.S. 537 (2007), the Supreme Court set forth a two-part test courts should apply to determine the appropriateness of a Bivens remedy in a given case. First, the Court must determine whether there is "any alternative, existing process for protecting the plaintiff's interests." W. Radio Servs. Co. v. U.S. Forest Serv., 578 F.3d 1116, 1120 (9th Cir. 2009) (citations omitted). If there is such a remedy, the Court's inquiry stops there. Mirmehdi, 689 F.3d at 982. If there is not an alternative remedy, the Court must ask "whether there nevertheless are factors counseling hesitation before devising such an implied right of action." W. Radio Servs. Co., 578 F.3d at 1120.

In Mirmehdi, the Ninth Circuit considered whether a Bivens remedy was available to the Mirmehdis, non-citizens suspected of involvement with the terrorist group Mujahedin-e Khalq, who brought suit against an FBI agent and an INS agent for wrongful detention pending deportation. 689 F.3d at 980. The Mirmehdis alleged these government officials presented false testimony and evidence at their bond revocation hearing resulting in their unlawful detention. Id.

1 | at 979. The Ninth Circuit found "deportation proceedings" were the appropriate context in

2 | which to determine whether a Bivens remedy was available. Id. at 981.

3 | The Ninth Circuit then applied the Wilkie test. Id. at 982. It found that the Mirmedhis'

4 | Bivens claim foundered at the first prong of the Wilkie test because the Mirmehdis were able to

5 | challenge their detention through two different remedial systems—the immigration system and

6 | habeas. Id. The Ninth Circuit noted that "Congress has established a substantial,

7 | comprehensive, and intricate remedial scheme in the context of immigration." Id. (citing Arar v.

8 | Ashcroft, 585 F.3d 559, 572 (2d Cir. 2009).) The Ninth Circuit rejected the Mirmehdis'

9 | argument that a Bivens remedy was appropriate because the immigration laws did not provide

10 | monetary compensation for unlawful detention. Id. It reasoned that Congress' failure to provide

11 | monetary relief could not be inadvertent given the multiple changes to the immigration laws. Id.

12 | The Ninth Circuit also found that the Mirmehdis' Bivens claim foundered at the second

13 | prong of the Wilkie test. Id. It noted that "immigration issues have the natural tendency to

14 | affect diplomacy, foreign policy, and the security of the nation" which "counsels hesitation in

15 | extending Bivens." Id. at 982-83 (citations omitted). The Ninth Circuit further noted that

16 | "concerns that always mitigate against subjecting a prosecutor's motives and decision-making to

17 | outside inquiry have particular force in the immigration context." Id. (quotations omitted).

18 | This case demonstrates the problems that flow from the Ninth Circuit's analysis in

19 | Mirmehdi. It is true that Mr. Lanuza was able to challenge the IJ's removal order by filing an

20 | appeal to the Ninth Circuit and by petitioning the BIA to reopen his case and remand it for an

21 | evidentiary hearing. (Dkt. No. 1 at 9-10.) Under the rationale of Mirmehdi, the availability of

22 | these procedures forecloses a Bivens remedy under the first prong of Wilkie. But this analysis

23 | conflates the availability of procedures to challenge an immigration decision with the availability

24 |

of protections to deter constitutional violations in the first instance.  For example, in <u>Bivens</u>, 403 U.S. at 397-98, the Supreme Court held petitioner could bring suit for damages against six federal agents for violating his Fourth Amendment rights even though the criminal complaint against petitioner—the result of the unlawful search—had been dismissed.  <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 409 F.2d 718, 719 (2d Cir. 1969).

Further, this analysis leads to the precise result a <u>Bivens</u> remedy is intended to prevent.  <u>Carlson v. Green</u>, 446 U.S. 14, 21 (1980) (" . . . the <u>Bivens</u> remedy, in addition to compensating victims, serves a deterrent").  If a <u>Bivens</u> remedy is not available wherever a non-citizen has the ability to seek review of an immigration decision, there is little to deter immigration officials from presenting false evidence or testimony during immigration proceedings or from otherwise compromising the integrity of such proceedings, the outcomes of which have significant consequences for non-citizens.

It is also true that Mr. Lanuza's claims implicate immigration issues.  Under the rationale of <u>Mirmehdi</u>, this forecloses a <u>Bivens</u> remedy under the second prong of <u>Wilkie</u>.  But while some immigration cases may implicate issues of national security, diplomacy or foreign policy, the facts of this case show that immigration cases often do not strongly implicate such concerns.

But because the Ninth Circuit's opinion in <u>Mirmehdi</u> forecloses a <u>Bivens</u> remedy, the Court GRANTS Defendant Love's Motion to Dismiss and DISMISSES Mr. Lanuza's claims against Defendant Love.

**B.  Qualified Immunity**

Although it finds the Ninth Circuit's opinion in <u>Mirmehdi</u> forecloses a <u>Bivens</u> remedy in this case, the Court nonetheless addresses Defendant Love's argument that he is shielded from liability by the defense of qualified immunity.  (Dkt. No. 9 at 11-15.)

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 230 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). In other words, the proper inquiry focuses on whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted . . . or whether the state of the law [at the time] gave fair warning to the officials that their conduct was unconstitutional." Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (citations omitted).

Qualified immunity does not shield a federal official from suit where it is alleged that he submitted false evidence during an immigration proceeding. It should be obvious to any reasonable federal official that submitting false evidence in an immigration proceeding, or in any judicial or quasi-judicial proceeding for that matter, is unlawful and unconstitutional and would undermine the integrity of such a proceeding. See Malley v. Briggs, 475 U.S. 335, 341 (1986) (qualified immunity available to all but the "plainly incompetent or those who knowingly violate the law.")

### III. Defendant United States' Motion to Dismiss

Defendant United States raises three arguments in support of its Motion to Dismiss: (1) Mr. Lanuza's claims against the United States are time-barred pursuant to the FTCA's two-year statute of limitations; (2) Mr. Lanuza's claims for malicious prosecution and abuse of process are not cognizable; and (3) Mr. Lanuza's claims for intentional and negligent infliction of emotional distress and negligence are not cognizable. (Dkt. No. 14 at 1-14.)

/

### A. Statute of Limitations

Defendant United States argues Mr. Lanuza's claims are barred by the FTCA's two-year statute of limitations for filing tort claims. (Dkt. No. 14 at 8); See 28 U.S.C. §§ 2401(b) and 2675 (an injured party must present a tort claim to the government within two years after his claim accrues). Defendant United States contends Mr. Lanuza's tort claim accrued on February 1, 2012, at the very latest, when Mr. Lanuza and his counsel received the forensic evaluation of the I-826 Form. (Id. at 9.) Defendant United States argues that because Mr. Lanuza did not file his FTCA tort claim with ICE until February 13, 2014, his claims against the United States are time-barred. (Id.)

Mr. Lanuza argues his tort claim was timely filed for three reasons: (1) the continuing tort doctrine; (2) equitable tolling; and (3) the accrual principles set forth by the Supreme Court in Heck v. Humphrey, 512 U.S. 477 (1994). (Dkt. No. 24 at 1-8.)

Courts apply the continuing tort doctrine where there is "no single incident that can fairly or realistically be identified as the cause of significant harm." Flowers v. Carville, 310 F.3d 1118, 1126 (9th Cir. 2002). Because the alleged introduction of false evidence during Mr. Lanuza's immigration proceedings is identifiable as the cause of the harm Mr. Lanuza alleges, the continuing tort doctrine does not apply.

A litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstances stood in his way. See Wong v. Beebe, 732 F.3d 1030, 1052 (9th Cir. 2013) (citations omitted). With respect to the second element, "equitable tolling is typically granted when litigants are unable to file timely [documents] as a result of external circumstances beyond their direct control." Id. (citing Harris v. Carter, 515 F.3d 1051, 1055 (9th Cir. 2008)). Mr. Lanuza fails to show extraordinary circumstances prevented him from filing his tort claim on time. Mr. Lanuza avers

he did not file his tort claim until after his removal proceedings had been terminated because he was afraid the government might retaliate. (Dkt. No. 25 at 4-5.) But aside from his allegations regarding the introduction of false evidence during his immigration proceedings, Mr. Lanuza has not alleged facts that show Defendant United States, or Defendant Love for that matter, took steps to prevent him from pursuing his tort claim. Further, Mr. Lanuza was represented by counsel at the time he allegedly discovered that the I-826 Form had been falsified. (Dkt. No. 1 at 9.) Although the Court finds Mr. Lanuza's concerns reasonable, equitable tolling does not apply.

In Heck, the Supreme Court held that a claim for damages against the government for an unconstitutional conviction or imprisonment did not accrue until the imprisonment was finally overturned because in order to "recover damages for allegedly unconstitutional conviction or imprisonment . . . a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-87. Although it appears the Ninth Circuit has not yet spoken on the issue of whether Heck applies in the civil immigration context, the Ninth Circuit has not limited its application of Heck to Section 1983 claims and has applied Heck's rule regarding accrual to FTCA claims as well. See Erlin v. United States, 364 F.3d 1127 (9th Cir. 2004). Further, to maintain an action for malicious prosecution, Mr. Lanuza must allege and prove that his removal order was reversed. See e.g. Peasley v. Puget Sound Tug & Barge Co., 13 Wash.2d 485, 497 (1942) (to maintain an action for malicious prosecution, a plaintiff must allege and prove that ". . . the proceedings terminated on the merits in favor of the plaintiff, or were abandoned . . .") Because Mr. Lanuza's malicious prosecution claim could not have accrued until his deportation order was reversed, the Court

finds Mr. Lanuza's malicious prosecution claim is timely under Heck's rule regarding accrual. However, Mr. Lanuza's abuse of process, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress claims do not require proof that his removal order was reversed. Therefore, Heck's rule regarding accrual does not apply to these claims. Because these claims accrued on February 1, 2012, at the latest, they are time-barred.

**B. Malicious Prosecution Claim**

Defendant United States argues Mr. Lanuza's malicious prosecution claim should be dismissed for two reasons: (1) the FTCA specifically excludes claims of malicious prosecution unless those claims are based on actions by an "investigative or law enforcement officer," citing 28 U.S.C. §2680(h); and (2) the FTCA specifically excludes tort claims based on misrepresentation and deceit. (Dkt. No. 14 at 11.)

Defendant United States argues Mr. Lanuza's malicious prosecution claim is not plausible and should be dismissed because Defendant Love is not an investigative or law enforcement officer. (Id.) But Mr. Lanuza's allegations are not limited to actions taken by Defendant Love. In his complaint, Mr. Lanuza alleges "[t]he I-826 was falsified by an ICE official to make it appear as if it had been signed and dated in January of 2000." (Dkt. No. 1 at 10.) Because it is plausible that an investigative or law enforcement officer engaged in actions that form the basis of Mr. Lanuza's malicious prosecution claim, dismissal of Mr. Lanuza's malicious prosecution claim is inappropriate. As such, the Court does not reach Defendant United States' argument that the United States has not waived sovereign immunity for claims based on the conduct of federal officials who act like investigative or law enforcement officers. (Dkt. No. 14 at 11-12.)

Defendant United States does not explain how Mr. Lanuza's malicious prosecution claim falls under the FTCA's misrepresentation and deceit exception. (Dkt. No. 14 at 11-12.) Further,

it does not appear that the misrepresentation and deceit exception encompasses the tort of malicious prosecution because the FTCA expressly permits suits for malicious prosecution based on acts or omissions of investigative or law enforcement officers of the United States.  28 U.S.C. §2680(h) (". . . with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter . . . shall apply to any claim arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.")

The Court DENIES Defendant United States' Motion to Dismiss as to Mr. Lanuza's malicious prosecution claim and GRANTS the motion as to Mr. Lanuza's remaining claims.

## Conclusion

The Court GRANTS Defendant Love's Motion to Dismiss and DISMISSES Mr. Lanuza's claims against Defendant Love, (Dkt. No. 9).  The Court GRANTS in part DENIES in part Defendant United States' Motion to Dismiss, (Dkt. No. 14.)  In light of its rulings on these motions, the Court DENIES Defendant Love's pending Motion to Stay, (Dkt. No. 10), as moot and DENIES Mr. Lanuza's pending Motion to Compel, (Dkt. No. 30), as moot.

Therefore, Mr. Lanuza's malicious prosecution claim may proceed against Defendant United States.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 20th day of March, 2015.

Marsha J. Pechman
United States District Judge