UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON

IGNACIO LANUZA,

        *Plaintiff*,

v.

UNITED STATES OF AMERICA,

        *Defendant*.[1]

CASE NO. 2:14-cv-01641-BJR

ORDER GRANTING THE UNITED STATES' MOTION TO DISMISS

## I. INTRODUCTION

Plaintiff Ignacio Lanuza ("Lanuza") brings this action for malicious prosecution under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680. Presently before the Court are a motion for partial summary judgment by Lanuza (Dkt. No. 131) and a motion to dismiss for lack of subject matter jurisdiction and for summary judgment by Defendant the United States of America ("United States") (Dkt. No. 136). Having considered the motions, the responses and replies thereto,[2] the record of the case, and relevant legal authorities, the Court will grant the United

---

[1] Former Defendant Jonathan Love is removed from the caption. Love reached a settlement agreement on the *Bivens* claim against him on April 29, 2019 (Dkt. No. 128). Pursuant to that agreement the Court dismissed the *Bivens* claim with prejudice the next day (Dkt. No. 129). Though Love's conduct as an Immigration and Customs Enforcement (ICE) counsel remains the focus of Lanuza's remaining claim for malicious prosecution under the FTCA, that statute provides that the United States is the sole party which may be sued for personal injuries arising out of certain torts committed by its employees. *See* 28 U.S.C. § 1346(b).

[2] At Lanuza's request (Dkt. No. 144) the Court did not consider a praecipe (Dkt. No. 142) filed by the United States that was out of conformity with local rules. Lanuza also requested that the Court strike several matters that were

1

States' motion to dismiss for lack of subject matter jurisdiction and strike the cross motions for summary judgment.

## II.   BACKGROUND

The facts have already been recounted in this Court's prior orders (Dkt. Nos. 35, 86) and in the Ninth Circuit's decision in this case, *Lanuza v. Love*, 899 F.3d 1019 (2018). Those facts are incorporated into this order. The Court will briefly summarize the relevant background.

Lanuza is presently a lawful permanent resident married to a U.S. citizen with two U.S. citizen children. He lives and works in Seattle. In 2008 Lanuza encountered an Immigration and Customs Enforcement ("ICE") official who believed that Lanuza was not present in the country legally. ICE then initiated immigration removal proceedings against him.

On May 6, 2009, Lanuza appeared before an immigration judge ("IJ") and applied for cancellation of removal. At the time, he met the eligibility requirements to apply, including physical presence in the United States continuously for at least ten years prior to being served a Notice to Appear. During this hearing, an attorney for ICE representing the government, Jonathan Love, stated that Lanuza's immigration file contained an I-826 Form that was signed by Lanuza in 2000, accepting voluntary departure to Mexico. The next week Love submitted to the court an I-826 Form purportedly signed by Lanuza on January 13, 2000.

The I-826 Form was critical in determining whether Lanuza would be able to remain in the United States with his family because a valid I-826 Form from January 13, 2000 would render him ineligible for cancellation of removal as it would have established an interruption of the required ten years of continuous presence.

---

submitted by the United States (Dkt. No. 144 at 4-6). The Court reviewed those materials and found them to be irrelevant for the purpose of this order, so did not consider them.

2

On January 5, 2010, the IJ found Lanuza ineligible for cancellation of removal and ordered him removed from the United States. The IJ's decision that Lanuza was not eligible for cancellation of removal was based on the I-826 Form. Lanuza appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), and the Department of Homeland Security ("DHS," the agency overseeing ICE) defended its position at the BIA. The BIA upheld the IJ's decision, "which was based exclusively on the January 2000 I-826," and ordered him removed to Mexico.

In December 2011, Lanuza's new counsel, Mr. Hilary Han, reviewed the agency file and discovered irregularities in the I-826 Form. Han then ordered a forensic examination, which revealed that the Form had been falsified. Most glaringly, the Form referred at top to the "U.S. Department of Homeland Security," an agency that was not yet created when the Form was purportedly signed on January 13, 2000.

Lanuza filed a motion to reopen his removal proceedings before the BIA on February 11, 2012. The BIA granted Lanuza's motion and remanded his case for a full evidentiary hearing on April 20, 2012, citing the "seriousness and particularity of the allegations" raised by Lanuza. DHS did not contest Mr. Lanuza's eligibility for cancellation of removal, and on January 9, 2014 the IJ granted the application, adjusting Lanuza's status to lawful permanent resident.

On February 13, 2014, Lanuza filed a $500,000 tort claim against the United States, Dkt. No. 1-6 at 2, which was administratively denied. Lanuza then commenced this action on October 23, 2014 against Defendants Love and the United States. The complaint (Dkt. No. 1) lists five claims under the FTCA: abuse of process, malicious prosecution, intentional infliction of emotional distress, negligence, and negligent infliction of emotional distress. The complaint also alleges that Love violated Lanuza's substantive and procedural due process rights under the Fifth

Amendment to the Constitution under a *Bivens* theory of liability. *See Bivens* v. *Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

On March 20, 2015, the Court[3] dismissed Lanuza's *Bivens* claim and four of the FTCA claims that were time-barred by the statute of limitations. Dkt. No. 35 at 13. The malicious prosecution claim was the only FTCA claim to remain.

On January 13, 2016, the U.S. Attorney's Office in Seattle filed criminal charges against Love for deprivation of Lanuza's civil rights in violation of 18 U.S.C. § 242. The single-count charge alleged that between July 3, 2008 and May 11, 2009, Love made fraudulent alterations to the Form I-826, and then on May 11, 2009 submitted the fraudulent and forged Form into evidence during Lanuza's proceedings. Love pleaded guilty according to a plea agreement, which stated, *inter alia*, that no other ICE employee knew about or participated in the alteration of the I-826 Form. *United States* v. *Love*, No. 16-CR-0005-BAT (W.D. Wash. April 20, 2016). At all relevant times, Love was an Assistant Chief Counsel for ICE. *Id.* Love was sentenced to 30 days in prison, one year of supervised release, 100 hours of community service, $12,000 in restitution to Lanuza (for attorneys' fees), and resignation from all state bar memberships for at least 10 years. *Id.*

Lanuza appealed the dismissal of the *Bivens* claim to the Ninth Circuit. That Court reversed, holding that "if the principles animating *Bivens* stand at all, they must provide a remedy on these narrow and egregious facts." *Lanuza*, 899 F.3d at 1021.

After remand, on April 29, 2019 Lanuza and Love moved to dismiss the *Bivens* claim as part of a settlement agreement, Dkt. No. 128. This Court granted the joint motion. Dkt. No. 130.

---

[3] The district court judge was Judge Marsha J. Pechman until the case was reassigned to the undersigned on September 1, 2016. Dkt. No. 104.

That left the FTCA malicious prosecution claim as the case's remaining claim, and the United States as the remaining defendant.

### III. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) allows litigants to seek the dismissal of an action for lack of subject matter jurisdiction. Federal district courts are courts of limited jurisdiction that "may not grant relief absent a constitutional or valid statutory grant of jurisdiction." *A—Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003) (citations and quotation marks omitted). "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001) (per curiam), abrogated on other grounds by *Hertz Corp. v. Friend*, 559 U.S. 77 (2010).

If at any time the court determines that it lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3).

### IV. DISCUSSION

As a sovereign, the United States is generally immune from suit except to the extent that it consents to be sued. "The party who sues the United States bears the burden of pointing to. . . an unequivocal waiver of immunity." *Prescott v. United States*, 973 F.2d 696, 701 (9th Cir. 1993). "Sovereign immunity is not merely a defense to an action against the United States, but a jurisdictional bar." *Powelson v. United States*, 150 F.3d 1103, 1104 (9th Cir. 1998). *See also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature.").

The FTCA waives the Government's sovereign immunity "for tort claims arising out of negligent conduct of government employees acting within the scope of their employment." *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008). The Government can be sued

"under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Meier v. Shinseki*, 626 F. App'x 706, 708 (9th Cir. 2015) (quoting 28 U.S.C. § 1346(b)(1)).

The FTCA's waiver of sovereign immunity is subject to certain exceptions listed in 28 U.S.C. § 2680. One is the "intentional tort exception" from 28 U.S.C. § 2680(h), which states that the United States shall maintain sovereign immunity for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

In 1974, Congress amended § 2680(h) by carving out an exception to the intentional tort exception. This was in response to instances of outrageous conduct by federal law enforcement officers. *See* Act of Mar. 16, 1974, Pub. L. 93-253, § 2, 88 Stat. 50. Called "the law enforcement proviso," the amended language extended the waiver of sovereign immunity to claims for six intentional torts, including malicious prosecution, when based on the "acts or omissions of investigative or law enforcement officers." § 2680(h).

The law enforcement proviso defines "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id*. Immigration officers are empowered by law to make arrests, seize evidence, and execute searches without warrants pursuant to 8 C.F.R. § 1357. Therefore, immigration officers are "investigative or law enforcement officer[s]" under § 2680(h). Notably, the law does not grant these powers to ICE attorneys. *See* 8 C.F.R. §§ 287.5(c)-(f). Neither party disputes that ICE attorneys are not bestowed the statutory powers that would qualify them as "investigative or law enforcement officers."

It follows from this framework of the law enforcement proviso that FTCA claims for malicious prosecution against government attorneys will be barred if the attorneys do not qualify as "investigative or law enforcement officer[s]" under § 2680(h). This rule is well-established in the Ninth Circuit. *See Cao v. United States*, 156 Fed.Appx. 48, 50 (9th Cir. 2005) (affirming dismissal of an FTCA malicious prosecution claim because plaintiff did not establish that either an immigration judge or an INS attorney were "investigative or law enforcement officer[s]" under § 2680(h)); *Wright v. United States*, 719 F.2d 1032, 1034 (affirming dismissal of an FTCA malicious prosecution claim against an Assistant United States Attorney but not an IRS agent because only the latter met the statutory qualification as an "investigative or law enforcement officer."); *Sims v. United States*, No. 07-cv-02082, 2008 WL 4813826 (E.D. Cal. Oct. 29, 2008) (holding that while immigration officers who are empowered to make arrests and execute warrants are "investigative or law enforcement officers" under § 2680(h), attorneys for DHS are not so-authorized and therefore are not subject to intentional tort actions).

Despite this well-settled rule, Lanuza raises several arguments that his FTCA malicious prosecution claim falls within the law enforcement proviso. Each lacks merit. First, Lanuza argues that absolute immunity is unavailable where "prosecutors . . . falsify evidence because the collection of evidence is an 'investigative function[ ] normally performed by a detective or police officer." *Lanuza*, 899 F.3d at 1026 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). In this vein, earlier in this case the Court ruled that "manufacturing evidence is 'investigatory' in nature and, therefore, Defendant United States would not be entitled to absolute immunity on the grounds that Mr. Love is a prosecutor." Order Denying Defendant United States' Motions to Dismiss, Dkt. No. 86 at 8.

Lanuza's argument erroneously conflates the law enforcement proviso with absolute immunity from actions arising under *Bivens* and 42 U.S.C. § 1983. The law enforcement proviso is not synonymous with those two, and in one important respect is opposite. Absolute immunity hinges on the *conduct* of the actor. *See Kalina* v. *Fletcher*, 522 U.S. 118, 127 (1997) (to determine whether absolute immunity applies in § 1983 cases, courts must focus on "the nature of the function performed, not the identity of the actor who performed it") (internal citations omitted). On the other hand, the law enforcement proviso depends on the *status* of the actor. *See Millbrook* v. *United States*, 569 U.S. 50, 57 (2013) ("By its terms, this provision [the law enforcement proviso] focuses on the *status* of persons whose conduct may be actionable, not the types of activities that may give rise to a tort claim against the United States.") (emphasis in original). Thus, even if Love engaged in investigative acts, he lacks the status of an "investigative or law enforcement officer" required to trigger FTCA liability.

Lanuza next argues that legislative history compels a conclusion that FTCA malicious prosecution liability is synonymous with *Bivens* liability. This is not correct. When interpreting a statute, courts must adhere to its plain language and purpose. *See Dolan* v. *U.S. Postal Serv.*, 546 U.S. 481, 486 (2006) ("Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute . . ."). Legislative history reveals that the motivation for Congress amending § 2680(h) in 1974 was "to make the Government independently liable in damages for the same type of conduct that is alleged to have incurred in *Bivens*." S. Rep. 93-588 (1974), *as reprinted in* 1978 U.S.C.C.A.N. 2789, 2791. The plain language of the added law enforcement proviso to § 2680(h) is consistent with this stated purpose: the amended law made the government liable for acts or omissions of "investigative or law enforcement officers" such as the federal law enforcement agents in *Bivens*. Notably, Congress

8

did not extend the statute's reach to those who are not "investigative or law enforcement officers." In light of the unambiguous language of the amended statute, it stands to reason that the phrase "same type of conduct" in the legislative history refers to torts that are committed by federal agents who possess legal authority to execute searches, seize evidence, or make arrests.

Finally, Lanuza urges that this case is like the *Arnsberg* case, where the Ninth Circuit in dicta stated that a judge or magistrate might trigger FTCA liability for the tort of false imprisonment if acting outside of their adjudicative capacity and in the act of apprehending a suspect. *Arnsberg v. United States*, 757 F.2d 971, 978 n.5 (9th Cir. 1985). This argument is unavailing. The *Arnsberg* court found that magistrates and judges are empowered by 18 U.S.C. § 3041 to make arrests, and so could qualify as "investigative or law enforcement officer[s]" for FTCA liability. *Id.* As is already established, Love is not an "investigative or law enforcement officer."

## V. CONCLUSION[4]

Lanuza's malicious prosecution claim does not fall within the law enforcement proviso of the FTCA's intentional tort exception. Where the United States has not consented to suit, it retains sovereign immunity and the claim must be dismissed for lack of jurisdiction. *See Gilbert v. Da Grossa*, 756 F.2d 1455, 1458 (9th Cir. 1985).

---

[4] Finding that the jurisdictional threshold for the FTCA malicious prosecution claim is not met, the Court need not reach the parties' summary judgment arguments over absolute immunity and whether Lanuza satisfies the elements of malicious prosecution. Given the thoroughness of the parties' briefings on the jurisdictional issue and the Court's reasoning in this order, the Court finds that oral argument, though requested by both parties, is not necessary.

The Court orders as follows:

1. The United States' combined rules 12(b)(1) and 56(c) motion to dismiss (Dkt. No. 136) is GRANTED;

2. The United States' motion for summary judgment on absolute immunity (Dkt. No. 136) is STRICKEN AS MOOT;

3. Lanuza's motion for partial summary judgment (Dkt. No. 131) is STRICKEN AS MOOT;

4. The case is DISMISSED WITH PREJUDICE.[5]

DATED this 6th day of August, 2019.

*Barbara J. Rothstein*
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE

---

[5] Ordinarily, a case dismissed for lack of subject matter jurisdiction should be dismissed without prejudice "so that a plaintiff may reassert his claims in a competent court." *See Eicherly* v. *O'Leary*, 721 Fed.Appx. 625, 627 (9th Cir. 2018); *Frigard* v. *United States*, 862 F.2d 201, 2014 (9th Cir. 1988). Since this claim arises under the FTCA and there is no other court with jurisdiction to hear the claim, prejudice attaches because the claim is extinguished.